UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEARCE C. CORDRAY<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>COHN RESTAURANT GROUP, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:17-cv-02375-GPC-NLS<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Dkt. No. 5]** |

Before the Court is Defendant Cohn Restaurant Group's ("Defendant") motion to dismiss the complaint for Plaintiff Pearce C. Cordray ("Cordray")'s failure to timely exhaust administrative remedies. (Dkt. No. 5.) On February 1, 2018, Plaintiff filed an opposition and on February 16, 2018, Defendant filed a reply. (Dkt. Nos. 7, 8.) As discussed below, because the Court considered documents outside the complaint, the Court converts the motion to dismiss to a motion for summary judgment. For the following reasons, the Court **DENIES** Defendant's motion for summary judgment.

## I.　BACKGROUND

### A.　Factual Background

Defendant owns and operates restaurants in Southern California, including Draft Republic, Inc., ("Draft Republic") and BoBeau Kitchen and Roof Tap Restaurant

("BoBeau"). (Dkt. No. 1, Compl. ¶ 7.) Plaintiff was hired as a food and beverage server by Defendant around July 23, 2014 at BoBeau located in Long Beach, California. (Id. ¶ 13.) On or about August 6, 2015, while working at BoBeau, Plaintiff was physically assaulted by a co-worker. (Id.) Plaintiff states "he was punched in the head by [a] co-worker and fell backwards onto a concrete floor and lost consciousness." (Id.) Plaintiff was transported to the emergency room at St. Mary's Medical Center in Long Beach, California via an ambulance. (Id.) At the emergency room, Plaintiff was "evaluated and subsequently admitted with a length of stay totaling in excess of 13 days." (Id.)

As a result of the incident, Plaintiff suffers retrograde and anterograde amnesia. (Id. ¶ 14.) Plaintiff states he "experienced confusion, slurred speech, left-right disorientation, loss of smell, problems with memory and changes in personality (e.g. emotional liability, irritability and a tendency to easily anger)" after he regained consciousness at the hospital. (Id.) Plaintiff was diagnosed with a skull fracture, subdural hemorrhaging, and subarachnoid hemorrhage, and developed blood clots in his arms." (Id.) Plaintiff's states he continues to experience neurocognitive sequelae from the "event that negatively [ ] impacted his life." (Id. ¶ 15.) The co-worker who assaulted Plaintiff was found guilty of the assault. (Id. ¶ 16.)

From August 2015 to November 2015, Plaintiff was placed on full-time disability. (Id. ¶ 17.) When Plaintiff returned to work, he was transferred to San Diego to work at Draft Republic. (Id.) Plaintiff asserts that "Defendant, its employees, agents and servants knew of [his] assault by his co-worker, his subsequent injuries, hospitalization and time off work because of a disability." (Id.) On or about November 24, 2015, Plaintiff was "wrongfully terminated from his employment without excuse." (Id.)

### B. Procedural Background

On August 2, 2017, Plaintiff made contact with the Equal Employment Opportunity Commission ("EEOC") regarding a charge of discrimination. (Dkt. No. 7-1, Cordray Decl. ¶ 13.) In a letter dated August 16, 2017, the EEOC directed Plaintiff to

review, sign and return the Charge of Discrimination ("Charge") within thirty days from the date of the letter. (Dkt. No. 1, Compl., Exs. 1, 2.[1]) However, the Charge was filed with the EEOC on October 2, 2017. (Id.)

On October 13, 2017, the EEOC issued a Notice of Right to Sue ("Notice"). (Id., Ex. 3.) The Notice informed Plaintiff that he must file a lawsuit in federal court within ninety (90) days of his receipt of the Notice. (Id.) Plaintiff states he received the Notice on or about October 18, 2017. (Id. ¶ 4.)

More than a month later, on November 22, 2017, Plaintiff filed the instant complaint alleging disability discrimination under the American with Disabilities Act ("ADA") pursuant to 42 U.S.C. § 12101 and the Fair Housing and Employment Act ("FEHA") pursuant to California Government Code section 12940; failure to engage in the interactive process under the ADA and FEHA; refusal to accommodate under § 501 of the Rehabilitation Act; and intentional infliction of emotional distress. (Dkt. No. 1.) He also seeks declaratory relief and punitive damages. (Id.)

On December 29, 2017, Defendant filed a motion to dismiss the entire complaint for Plaintiff's failure to timely exhaust administrative remedies. (Dkt. No. 5.) In response, Plaintiff submitted his declaration and a neuropsychological evaluation to support equitable tolling.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police

---

[1] A court "may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). Here, attached to the Complaint is a Letter from the EEOC and the Charge that was filed with the EEOC. Accordingly, the Court may consider the documents.

Dep't., 901 F.2d 696, 699 (9th Cir. 1990). A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

"If matters outside the pleadings are submitted, the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is treated as one for summary judgment." Jacobson v. AEG Capital Corp., 50 F.3d 1493, 1496 (9th Cir.1995); see also Del Monte Dunes v. City of Monterey, 920 F.2d 1496, 1507–08 (9th Cir. 1990) (where district court considered affidavits and exhibits in support of and opposition to motion to dismiss, court of appeals treated dismissal as order granting summary judgment under Fed. R. Civ. P. 56(c)).

Here, Plaintiff has produced a declaration and a neuropsychological evaluation to support his equitable tolling argument. (Dkt. No. 7-1, Cordray Decl.; id., Ex. A.) Defendant does not dispute or object to Plaintiff's reliance on the facts in the declaration on its Rule 12(b)(6) motion and instead argues that the facts in the declaration do not support equitable tolling. (See Dkt. No. 8 at 4.)

When a court decides to consider facts outside the complaint it must provide the parties with notice that it intends to convert the motion to dismiss into a motion for summary judgment, and allow the parties an opportunity to further brief the issue. Grove v. Mead School Dist. No. 354, 753 F.2d 1528, 1532–33 (9th Cir. 1985). "Notice occurs when a party has reason to know that the court will consider matters outside the pleadings." Id. at 1533. In Graves, the parties agreed the judge should read "The Learning Tree" and the plaintiff submitted affidavits of her witnesses. Id. At the hearing, the judge considered both matters outside the pleadings and the Ninth Circuit held that the plaintiff had adequate notice that the judge would consider them. Id.

Here, Plaintiff submitted a declaration and neuropsychological report to support his

4

3:17-cv-02375-GPC-NLS

opposition, and in its reply, Defendant relies on the declaration to support its argument that Plaintiff does not suffer a severe mental impairment that prevented him from timely filing. Both parties have notice that the Court will consider Plaintiff's declaration and report. Therefore, the Court converts Defendant's motion to dismiss to a motion for summary judgment under Rule 56.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendant moves to dismiss Plaintiff's claims on the ground that Plaintiff has failed to exhaust his administrative remedies since Plaintiff has not made a timely Charge of Discrimination with the appropriate administrative agencies. Plaintiff agrees that he did not submit a timely Charge with any administrative agency but opposes dismissal of his claims.

To bring claims under the ADA and the Rehabilitation Act, a plaintiff must file a claim with the EEOC within 180 days of the alleged act(s) of discrimination, or within 300 days if he has filed state charges with the California Department of Fair Employment and Housing ("DFEH"). 42 U.S.C. § 2000e–5(e); 42 U.S.C. § 12117 (ADA incorporates the enforcement procedures sets forth at 42 U.S.C. § 2000e-5); Leong v. Potter, 347 F.3d 1117, 1121 (9th Cir. 2003) ("The district court properly held that Leong was required to exhaust his administrative remedies with the EEOC before pursuing his Rehabilitation

5

3:17-cv-02375-GPC-NLS

Act claim in district court."). Applying the longer 300 day limitations period to Plaintiff's alleged discrimination date of November 24, 2015, Plaintiff was required to file an administrative charge with the EEOC by September 19, 2016.

Under California's FEHA, an administrative complaint must be filed within one year of the "alleged unlawful practice or refusal to practice occurred", or within 90 days thereafter if the employee discovered the facts of the unlawful practice after expiration of the one year period. Cal. Gov. Code § 12960(d). Here, Plaintiff does not allege he discovered the unlawful practice after the expiration of the one year period. Applying the limitations period, Plaintiff was required to file an administrative charge with the DFEH by November 24, 2016.

Plaintiff concedes that he did not timely exhaust his administrative remedies. (Dkt. No. 1, Compl. ¶ 55.) Since he filed a dual charge[2] with the EEOC on October 2, 2017, he failed to timely exhaust his administrative remedies. Defendant asserts, that consequently, Plaintiff's claims under the ADA, FEHA, and the Rehabilitation Act are barred for failing to timely exhaust administrative remedies.

## B. Equitable Tolling

In response, Plaintiff argues he is entitled to equitable tolling because (1) his traumatic head injury and subsequent mental symptoms stood in the way and (2) he did not have actual or constructive knowledge of the filing period. (Dkt. No. 7 at 10[3].)

The Supreme Court "has held that the failure to file a timely EEOC administrative complaint is not a jurisdictional prerequisite to a Title VII claim, but is merely a statutory requirement subject to waiver, estoppel and equitable tolling." Sommatino v. United States, 255 F.3d 704, 708 (9th Cir. 2001) (citing Zipes v. Trans World Airlines, Inc., 455

---

[2] A dual charge allows a claimant to file with one agency and that agency will send the complaint to the other agency. See, e.g., Laquaglia v. Rio Hotel & Casino, Inc., 186 F.3d 1172, 1175-76 (9th Cir. 1999); (Dkt. No., 1, Ex. 1 at 16 (EEOC notifying that it will send a copy of the Charge to DFEH).
[3] Page numbers are based on the CM/ECF pagination.

6

U.S. 385, 393 (1982)). "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999) (citation omitted). The doctrine of equitable tolling focuses on whether there was excusable delay by the plaintiff. Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002). The principles of equitable tolling do not extend to garden variety claims of excusable neglect, and courts generally have applied equitable relief only sparingly. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990); Scholar v. Pac. Bell, 963 F.2d 264, 267-68 (9th Cir. 1992). Plaintiff argues that extraordinary circumstances prevented him from timely filing a claim.

### 1. Mental Impairment

The Ninth Circuit has equitably tolled administrative deadlines for mental incompetence. Johnson v. Lucent Techs., Inc., 653 F.3d 1000, 1010 (9th Cir. 2011). A plaintiff "must show his mental impairment was an extraordinary circumstance beyond his control by demonstrating the impairment was so severe that either (a) plaintiff was unable rationally or factually to personally understand the need to timely file, or (b) plaintiff's mental state rendered him unable personally to prepare [a complaint] and effectuate its filing." Id. (citation omitted). A plaintiff must also demonstrate "diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances." Id. (citation omitted). There must be showing that the plaintiff's mental illness was "so severe that [he was] unable . . . to understand the need to timely file." Forbess v. Franks, 749 F.3d 837, 840 (9th Cir. 2014).

A case where a showing of mental incompetence was severe enough to warrant equitable tolling involved a plaintiff who was repeatedly sexually abused and raped at work which left her "severely impaired and unable to function in many respects." Stoll, 165 F.3d at 1242 (9th Cir. 1999). She presented overwhelming evidence that she was

7

"completely psychiatrically disabled." Id.  In another case, equitable tolling was applied where a habeas petitioner's mental illness was so severe that he suffered from delusions that he worked undercover for the FBI that he was incapable of understanding the need to timely file his petition.  Forbess, 749 F.3d at 840.  His mental delusions were supported by psychological evaluation of three physicians and by the mental health records.  Id.

However, equitable tolling was not applied where a plaintiff was homeless, had post-traumatic stress disorder and had side effects from medication because the plaintiff did not show he could not understand the meaning of the deadline.  Friend v. Hegarty, Case No. 15cv4506-HRL, 2017 WL 1164291, at *7 (N.D. Cal. Mar. 29, 2017).  In another case, evidence to support Plaintiff's diagnosis of hyperparathyroidism, and reports that he was being treated for chronic fatigue, depression, headaches, back pain and anxiety disorder did not explain his failure to timely pursue his claim.  Sowell v. Freescale Semiconductor, Inc., No. CV 07-1738-PHX-JAT, 2008 WL 2941269, at *4 (D. Az. July 25, 2008).

The Court looks at the period from the incident, November 24, 2015 until October 2, 2017 when he filed his Charge with the EEOC.  Plaintiff states that when he was terminated, he made it known that he wanted to continue working.  (Dkt. No. 7-1, Cordray Decl. ¶ 8.)  After his termination, he states that he was "allowed to return to work on part time basis-20 hours per week" but that his amnesia, depression prevented him from continuing to work.  (Id. ¶ 11.)  Around June 17, 2017, during a dinner with his girlfriend and friends, someone recommended that he contact the San Diego County Bar Association's Lawyer Referral Program.  (Id. 12.)  He also states that before the dinner in June 2017, he had attempted to contact other attorneys but never got a return call.  (Id.)  On July 19, 2017, Plaintiff called the Bar Association's Lawyer Referral Service and made contact with an attorney on August 2, 2017.  (Id. ¶ 13.)  These facts fail to show that Plaintiff's mental state was so severe that he was unable to understand about the filing deadline or personally prepare a Charge.

Plaintiff also attaches a neuropsychological evaluation dated August 9, 2016 with an evaluation date of July 27, 2016. (Dkt. No. 7-1, Cordray Decl., Ex. A.) During the evaluation, numerous neuropsychological and psychological tests were performed. (Id., Ex. A at 9-13.) However, Plaintiff merely attaches the evaluation to his declaration and fails to address the significance of the results of these tests and how the results affected his ability understand the need to timely file or to personally prepare a Charge. The evaluation reveals that he "displayed adequate cognitive development", his IQ was in the "average range with average verbal . . . and perceptual reasoning abilities", and "demonstrated intact performance on aspects of executive functioning." (Id. at 13.) He showed weakness in "processing speed executive function, language, and motor dexterity" and "below expectation in aspects of inhibitory control, attention, memory, and psychomotor processing speed." (Id.) "In summary, Mr. Cordray's neurocognitive profile is characterized by intact functioning in several of the domains assessed, with deficits in memory, attention, inhibitory, control, and psychomotor speed." (Id. at 14.) While Plaintiff has suffered impairments due to the incident at his prior work, they are not so severe that he was unable to understand that he needed to timely file an administrative appeal or he was unable to personally prepare a Charge.

Moreover, Plaintiff has not demonstrated diligence. Plaintiff asserts that he "acted with extreme diligence" despite his limited knowledge and limited mental capacity. (Dkt. No. 7-1, Cordray Decl. ¶ 16.) However, he has failed to show that he was diligent during the limitations period from November 24, 2015 until September 19, 2016, or November 24, 2016. Instead, his diligence is demonstrated after the limitations period had expired, when he was referred to the Bar Association on June 17, 2017. The Court concludes that Plaintiff has not demonstrated that his mental impairments were an "extraordinary circumstance" that prevented the timely filing of his administrative Charge. See Stoll, 165 F.3d at 1242.

/ / / /

9

## 2. Lack of Actual or Constructive Knowledge

The doctrine of equitable tolling "has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002) (quoting Leorna v. United States Dep't of State, 105 F.3d 548, 551 (9th Cir. 1997)); see Leong v. Potter, 347 F.3d 1117, 1123 (9th Cir. 2003). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." Johnson, 314 F.3d at 414 (citing Santa Maria, 202 F.3d at 1178 (citations omitted)). "[O]nce a claimant retains counsel, tolling ceases because she has gained the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements." Leorna, 105 F.3d at 551. In Leorna, the last act of alleged discrimination occurred in April 1993, when the State Department terminated Leorna's candidacy for employment. Id. At that time, Leorna had neither actual nor constructive notice of the filing period at that time. Id. Therefore, the court tolled the forty-five-day period within which to contact a State Department EEO counselor until September 1993, when Leorna retained counsel. Id. at 551.

In Summar, the district court held that plaintiff was not entitled to equitable tolling because she had actual notice of the time limitations in filing an EEO complaint based on her previous experience filing a timely EEO complaint. Summar v. Potter, 355 F. Supp. 2d 1046, 1057 (D. Alaska 2005). In Gessele v. Jack in the Box, Inc., 6 F. Supp. 3d 1141, 1163 (D. Or. 2014), the Court concluded that Plaintiffs' personal lack of legal knowledge cannot support equitable tolling because Plaintiffs were represented by counsel well before the statute of limitations passed, and, therefore, Plaintiffs were charged with constructive knowledge of the FLSA's written-consent requirements and statute of limitations. Id. In another case, the district court held that the plaintiff was deemed to

10

have constructive knowledge when the defendant conspicuously posted the required EEO notice at the place of employment. Taylor v. W. Oregon Elec. Co-op., Inc., No. CV 03-1311-ST, 2005 WL 2709540, at *6 (D. Or. Oct. 21, 2005).

Here, Plaintiff asserts he did not have actual or constructive knowledge of the EEOC requirements until he made contact with an attorney on August 2, 2017, (Dkt. No. 7-1, Cordray Decl. ¶¶ 10, 12, 13), and Defendant has not argued or demonstrated otherwise. Therefore, equitable tolling applies from the alleged date of wrongful termination, November 24, 2015, until he talked to an attorney on August 2, 2017 and was informed about filing a Charge with the EEOC. Because he filed his Charge with the EEOC on October 2, 2017 and the instant complaint was filed over a month later on November 22, 2017, the complaint is timely under either federal or state law.

Because the Court denies Defendant's motion for summary judgment on the first, second, fourth and seventh causes of action for failing to exhaust, Defendant's motion as to the remaining claims also fail as they are derivative of the ADA and FEHA disability claims.[4]

## CONCLUSION

Based on the reasoning above, the Court DENIES Defendant's motion for summary judgment. The hearing date set on March 23, 2018 shall be **vacated.**

**IT IS SO ORDERED.**

Dated: March 19, 2018

Hon. Gonzalo P. Curiel
United States District Judge

---

[4] The Court notes that the Complaint does not include a third cause of action. (Dkt. No. 1, Compl.)

11